UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| MICHAEL TARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:14-CV-269-REW |
| v. ) | |
| ) | MEMORANDUM OPINION AND |
| CAROLYN W. COLVIN, ACTING ) | ORDER |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court considers cross-motions for summary judgment under the District's standard briefing protocol. Plaintiff/Claimant, Michael Tarter, by counsel, appeals the Commissioner's denial of Title II disability insurance benefits.[1] The overall issue is whether substantial evidence supported the ALJ's factual decisions, as required by 42 U.S.C. § 405(g). The ALJ's failure to comply with 20 C.F.R. § 404.1527 requires remand in this context.

I. **Relevant Facts and Procedural Overview**

Tarter filed for Title II disability and disability insurance benefits on April 28, 2011, alleging a disability beginning on December 22, 2010. In September 2011, the Social Security Administration denied his initial claim for benefits. DE #9-1 (Disability Determination Explanation) at 80-91.[2] On reconsideration in December 2011, the Administration again denied disability insurance benefits. *Id.* at 93-101. Upon Tarter's request pursuant to 20 C.F.R. § 416.1520 *et seq.,* Administrative Law Judge (ALJ) Karen R. Jackson conducted a video hearing

---

[1] The Court assesses Title II claims under familiar, generally applicable social security standards. *See, e.g.*, *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 957-58 (6th Cir. 2015).
[2] All citations correspond to CM/ECF pagination.

1

on March 7, 2013. *Id.* at 23-32 (ALJ Hearing Decision). Vocational Expert Martha Goss also testified at the hearing. Following the hearing, the ALJ determined that Tarter was not under a disability during the relevant period and denied his claim for disability and disability insurance benefits. *Id.* The Appeals Council denied Tarter's request for review, precipitating the instant Complaint. *Id.* at 4 (Notice of Appeals Council Action denying request for review); DE #1 (Complaint).

At the time of the hearing, Tarter was a forty-nine year old married male. DE #9-1 (Hrg. Tr.) at 40-41. He self-reported a height of 6'1" and a weight of between 342-345 pounds. *Id.* In seeking disability insurance benefits, Tarter initially asserted an alleged onset date (AOD) of December 22, 2010. At the hearing, Tarter, by counsel, amended the AOD date to July 18, 2011. *Id.* (Hrg. Tr.) at 42; *id.* (ALJ Hearing Decision) at 23 (reflecting amended AOD of July 18, 2011).[3]

In evaluating Tarter's disability claim, the ALJ conducted the recognized five-step analysis. 20 C.F.R. § 404.1520. The ALJ first determined that Tarter had not engaged in substantial gainful activity, a defined term, since his amended AOD July 18, 2011 through his last insured date of March 31, 2012. DE #9-1 (ALJ Hearing Decision) at 26.[4] Next, the ALJ found that Tarter presented 7 severe impairments: (1) chronic low back pain; (2) status-post three lumbar surgeries; (3) bilateral shoulder arthritis; (4) obesity; (5) hypertension; (6) history of obstructive sleep apnea; and (7) type II diabetes mellitus. *Id.* In the third step, the ALJ determined that Tarter "has severe impairments within the meaning of the applicable regulations, but [that] the impairments do not meet or medically equal any of the listed impairments." *Id.* at

---

[3] Neither of the parties address this discrepancy. The ALJ discussed both dates. In light of the disposition, the Court conducts no distinct analysis.
[4] The ALJ determined also that Tarter last met the insured status requirements of the Social Security Act on March 31, 2012.

26. In considering Tarter's residual functional capacity (RFC) (step 4), the ALJ concluded that, through the date last insured, Tarter had the residual functional capacity "to perform less than the full range of light work" and made specific findings as to Tarter's RFC. *Id.* at 27-30. The ALJ next found that, "[t]hrough the date last insured, the claimant was unable to perform any past relevant work." *Id.* at 30. Under the final step, the ALJ found that jobs "existed in significant numbers in the national economy that the claimant could have performed." *Id.* at 31. The ALJ thus concluded that Tarter had not, during the relevant period,[5] been under a disability, as defined in the Social Security Act, and denied the application for disability benefits and disability insurance benefits. *Id.* at 32.

Tarter, by counsel, timely filed for review with the Appeals Council, which denied review. Plaintiff subsequently filed the instant action for judicial review pursuant to 42 U.S.C. § 405(g). Tarter now moves for summary judgment, contending that the ALJ erred in discrediting the opinions of Tarter's treating source physician. The Commissioner filed a cross-motion for summary judgment. The motions stand ripe and ready for review.

**II. Standard of Review**

Judicial review pursuant to § 405(g) is narrow. The Court confines itself to determining whether substantial evidence supported the ALJ's factual rulings and whether the Secretary properly applied the relevant legal standards. 42 U.S.C. § 405(g); *see also Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)). Per the Social Security Act's express terms, the Commissioner's findings are conclusive as to any fact supported by substantial evidence. 42 U.S.C. § 405(g); *see also*

---

[5] The relevant period is between the AOD (either December 2010 or July 2011) and March 2012, the date last insured. Tarter received benefits due to a prior disability determination from ALJ Timothy G. Keller from November 2, 2005 and May 17, 2007. DE #9-1 (ALJ Hearing Decision) at 68-77.

3

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). Substantial evidence is more than a mere scintilla and is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Perales*, 91 S. Ct. at 1427); *see also Osborne v. Colvin*, No. 0:13-CV-174-EBA, 2014 WL 2506459, at *3 (E.D. Ky. June 3, 2014) (applying standard).

Given the limited nature of substantial evidence review, the Court does not try the case *de novo*, make credibility determinations, or resolve conflicts in the evidence. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Indeed, if substantial evidence exists to support the ALJ's decision, the reviewing court must affirm the ALJ "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations and internal quotation marks omitted). The deferential standard creates for the Commissioner a "zone of choice," which, assuming adequately supportive evidence, is immune from Court interference. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). The Commission must, however, comply with its own procedural rules, and a prejudicial deviation from requisite procedures warrants remand. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

**III. Analysis**

Plaintiff here alleges one claim – that the ALJ erroneously discredited the opinion of his treating physician,[6] Dr. Mohammad Shahzad. DE #12-1 (Memorandum). Per Tarter, the ALJ

---

[6] Social Security regulations define a treating source as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing relationship with you." 20 C.F.R. § 404.1502. An ongoing treatment relationship is established with an acceptable medical source "when the medical evidence establishes that you see, or have seen, the source with a frequency consistent

used "boilerplate, computer generated language which states no specific basis for rejecting the treating physician RFC of Dr. Shahzad." *Id.* at 8. The Commissioner defends the ALJ's analysis as appropriate and compliant under applicable regulations. DE #13 (Motion).

The Sixth Circuit has frequently addressed the contours of the treating physician rule. For example:

> The agency promises claimants that it will give more weight to the opinions of treating sources than to non-treating sources. 20 C.F.R. § 404.1527(d). The opinions of treating physicians carry more weight because they likely provide "a detailed, longitudinal picture" of the claimant's medical impairment(s) that cannot be obtained from objective medical findings alone or from reports of consultants' examinations. *Wilson*, 378 F.3d at 544. An ALJ must give a treating source opinion concerning the nature and severity of the claimant's impairment controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); [*Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009).] However, a doctor's opinion that a patient is disabled from all work may invade the ultimate disability issue reserved to the Commissioner and, while such an opinion could still be considered, it could "never be entitled to controlling weight or given special significance." SSR 96-5p. 1996 WL 374183, at *5 (July 2, 1996) ("Medical sources often offer opinions about whether an individual . . . is 'disabled' or 'unable to work[.]' . . . Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner."); 20 C.F.R. § 404.1527(e)(1).
>
> If the ALJ decides not to give a treating physician's opinion controlling weight, the ALJ may not reject the opinion but must apply other factors to determine what weight to give the opinion, such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source[.]" *Wilson*, 378 F.3d at 544 (citing § 404.1527(d)(2)). If benefits are denied, the ALJ must give "specific reasons for the weight given to the treating source's medial opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p,

---

with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." *Id.* The Commissioner does not here dispute that Dr. Shahzad qualifies as a treating physician. The brief for the Commissioner consistently discusses Dr. Shahzad as a treating source. DE #13, at 3 (calling Shahzad Tarter's "primary care physician").

>1996 WL 374188, at *5 (July 2, 1996); [*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)] (citing Rule 96-2p for the proposition that all cases carry a rebuttable presumption that a treating physician's opinion "is entitled to great deference, its non-controlling status notwithstanding").

*Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 437 (6th Cir. 2013).

Tarter contends that the "objective medical evidence supports Dr. Shahzad's limitations" DE #12-1 at 6, and that, "[c]ontrary to applicable law, the ALJ inserted boilerplate, computer generated language which states no specific basis for rejecting the treating physician RFC of Dr. Shahzad." *Id.* at 8. The Commissioner defends the ALJ's RFC, alleging that "[g]iven this record of minimal complaints [between July 2010 and June 2011], often normal examinations, and effective care, it was reasonable for the ALJ to find that Dr. Shahzad's extremely restrictive opinion of Plaintiff's functioning was inconsistent with the objective medical evidence." DE #13 (Motion) at 9.[7]

The Court has assessed the full record, to include the decision, the hearing transcript, and the entirety of the administrative appendix. The issue here is a narrow one. The ALJ summarily assigned but light weight to the opinions of Dr. Shahzad as to Tarter's restrictions. Whether this was improper, and whether any impropriety requires remand turns on § 404.1527 and the Sixth Circuit's treating source principles stated in *Wilson* and later cases.

Dr. Shahzad had treated Tarter for many years. This treatment involved pre- and post-surgical care for back problems, referrals for, *e.g.*, sleep apnea, and long-term oversight and management of hypertension and diabetes. Much of the care occurred pre-disability (alleged) onset, but between August 2011 and September 2012, Shahzad saw and treated Tarter on at least

---

[7] The Government's defense of the decision was much sounder than the ALJ's own effort, thus the issue here.

5 distinct occasions. In March 2012, Dr. Shahzad completed a detailed functional assessment that differs sharply and in material respects from the RFC adopted by the ALJ. DE #9-1, at 251-57.

In largely rejecting Dr. Shahzad, the ALJ's decision included an uncritical review of Shahzad's treatment notes, a short and neutral restatement of Shahzad's functional findings, and then the following:

> The Administrative Law Judge accords little weight to Dr. Shahzad's opinion as it is not supported by the objective medical evidence of record.

DE#9-1, at 29.  This single sentence is the entire stated rationale for the ALJ's election to accord little weight to Shahzad's views. The opinion then went on to discuss (minimally) certain particular evidence of concern to the ALJ, including an August 2011 Shahzad visit, November 2012 treatment notes from an APRN, and the absence of any suggestion that further back surgery is indicated.

The regulation imposes a "clear and explicit elaboration requirement." *Bowlin v. Astrue*, No. 6:09-02-DCR, 2009 WL 2423309, at *4 (E.D. Ky. Aug. 5, 2009). This issues from the promise, in the section, that the Commissioner "will always give good reasons . . . for the weight we give your treating source's opinions." § 404.1527(c)(2). Failure to provide sufficient explanation may undercut the substantiality of the decisional basis, deny a claimant procedural rights, threaten the fairness of (and public confidence in) the process, and frustrate effective review. *See, e.g.*, *Wilson*, 378 F.3d at 543-46 (discussing rule rationale); *Bowlin*, 2009 WL 2423309, at *4 (citing "dual purpose" of explanation requirement: communication to claimants and facilitation of meaningful review). The rule protects important process expectations and administrative requisites. *See Rogers*, 486 F.3d at 243 (failure to adhere to procedural dictates "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified

based upon the record"); *Minor*, 513 F. App'x at 437 (declaring, "The ALJ could not ignore or reject these physicians' opinions without giving a principled basis for doing so[.]").

The proper ALJ decision, as SSR 96-2 assures:

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2, 1996 WL 374188, at *5 (July 2, 1996).[8]

Here, ALJ, through a single analytical sentence, merely quoted a blended formulation of the legal basis for not affording a treating physician's views "controlling weight." Thus, the decision cursorily assigned "little weight" and criticized Dr. Shahzad's "opinion" as "not supported by the objective medical evidence of record." This is a naked conclusion without the mandated accompanying articulation of specific reasons. An ALJ "cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010). Of course, even if an ALJ does not assign "controlling weight" to the treating source's view, the ALJ still must consider the opinion and assess it weight based on the balance of § 404.1527(c) factors. As the Sixth Circuit readily recognized,

> Put simply, it is not enough to dismiss a treating physician's opinion as "incompatible" with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.

*Friend*, 375 F. App'x at 552.

---

[8] "According to a regulation, Social Security Rulings 'represent precedent final opinions and orders and statements of policy and interpretations' adopted by the Social Security Administration and 'are binding on all components of the Social Security Administration.' 20 C.F.R. § 402.35(b)(1) (2004); *see also Sykes v. Apfel*, 228 F.3d 259, 271 (3d Cir. 2000)." *Wilson*, 378 F.3d at 549 n.1.

The questions are whether the decision, judged in full context, contravenes the rule and requires remand. The Court finds that the ALJ failed to explain adequately the consideration given Dr. Shahzad's views. The ALJ collapsed the entire rationale into one analysis-free sentence, assigning "little weight" to the opinion "as it is not supported by the objective medical evidence of record." This conclusion does not address, accurately or specifically, the findings that trigger controlling weight—that an opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in your case record." § 404.1527(c)(2). Indeed, the ALJ's conclusion unclearly blends these principles without discussion or specification, simply declaring Shahzad's views "not supported by the objective medical evidence of record." This reminds the Court of the criticized phrasing in *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013), where the Sixth Circuit rejected as ambiguous and inapt to the standard an ALJ's characterization of an opinion as "not well-supported by any objective findings." The ALJ here does not declare the other evidence substantial and does not particularize what contra evidence she views as objective but worthier of credence. This makes review nearly impossible.

The ALJ did not catalog or list what undergirded her phrasing. Thus, following a neutral recitation of the history, the only particular evidence later cited was Tarter's August 2011 visit with Shahzad, his November 2012 APRN appointments, and the lack of indicated prospective back surgery. Although the August 2011 notes do raise questions (by citing "normal station" and "normal gait", DE #9-1, at 275), those same notes plainly indicate ongoing treatment for back issues: "Abnormal: joint pain, joint stiffness or swelling, back pain." *Id.* at 274. The "chief complaint" included, "Medication not helping control the pain." At most, the August entry presented ambiguities. The ALJ did not parse the record or account for the comparative entries.

9

The November 2012 APRN encounters seem significant to the ALJ because the APRN purportedly prescribed 30 minutes of exercise per day. First, it is not at all self-evident that such a recommendation would conflict with Dr. Shahzad's views and limitations. Second, the recommendation actually was merely stated as hortatory: "Educated pt on well balanced diet and exercising 30 mins daily **or as tolerated**." *Id.* at 311 (emphasis added). Exercise as tolerated is not the same as a 30 minute requirement and does not objectively conflict with Shahzad. The basis for the factual perception of noncompliance is not cited, but Tarter's reaction to an exercise admonition hardly conflicts with Shahzad's views. The Court has difficulty accepting the discussion as confirmatory of the opinion weight given.

Finally, the Court sees no expert, in this record, assigning significance to the fact that Tarter does not face additional back surgery. At least, the ALJ cites none. This could theoretically be relevant, but the medical sources do not declare it as such. Tarter had multiple surgeries based on a prior MRI. All sources recognize significant back issues. That the causes have not led to an additional surgical intervention is not logically inconsistent with Shahzad's views of the nature and severity of the impairments at this time.

The Court also adds that the ALJ did not differentiate among Shahzad's many opinions, rather weighing them summarily and in an integrated fashion. This creates at least two problems. First, part of Shahzad's views did hinge on medication side effects. His opinion in that regard essentially stood alone—Dr. Nold, *e.g.,* did not assess or discuss medication matters or other non-exertional limitations. Further, the ALJ dispatched Shahzad's opinions in one fell swoop. Thus, the sequential analysis built into the regulation, which is meant to assured principled assessment of a treating source even when that source does not receive controlling weight, simply is not apparent within the ALJ's decision. The regulation is not a formulaic rule, and

10

reviewing courts do not require slavish adherence. *See Friend*, 375 F. App'x at 551 (setting forth harmless error analysis, in context, and rejecting notion of "arbitrary conformity at all times"). However, the Court must be in a position to discern that the ALJ actually engaged in the analysis and considered the various weight factors. The regulation promises that when the Commissioner denies controlling weight, "we apply the factors" otherwise listed to determine proper weight. These include longevity, treatment intensity, supportability, and consistency. By dispatching the analysis in one conclusory sentence, the ALJ short-circuited the process and denied an opportunity for meaningful review.[9]

The Court wrestled with the proper result here because there are significant problems with Dr. Shahzad's opinions. Unfortunately, while the ALJ's decision might be defensible on proper articulation, the Court's role is not to search out and supply an underpinning for affirmance. Violation of the treating physician rule is significant procedurally. This Circuit "does not hesitate to remand where the Commissioner has not provided good reasons for the weight given to a treating physician's opinion." *Gayheart*, 710 F.3d at 380 (quotation omitted). The Court has assessed whether it can treat the violation here as harmless under the principles of *Friend*. The Commissioner did not engage in this analysis, but the Court has evaluated whether Dr. Shahzad's opinion is patently incredible or whether the ALJ's decision indirectly met the

---

[9] This differs significantly from *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009), cited here by the Commissioner. In that case, the ALJ gave a short but pithy characterization of the treating physician's opinion, effectively communicating weight and good reasons. The Court described the reference as follows: "While this stated reason may be brief, it reaches several of the factors that an ALJ must consider when determining what weight to give a non-controlling opinion by a treating source, including: the length of the treatment relationship and the frequency of examination, 20 C.F.R. § 404.1527(d)(2)(i); the nature and extent of the treatment relationship, § 404.1527(d)(2)(ii); and the supportability of the opinion, § 404.1527(d)(3)." *Id*. The explanation included direct reference to treatment chronology, history, and opinion inconsistency. The Court views the other brief but defensible decisions cited as similarly distinguishable. Each involves detail regarding weight given and rationale, not a summary rejection invoking only the regulatory language.

procedural purposes of the regulation. *Friend*, 375 F. App'x at 551-52. Despite misgivings about the intensity of Shahzad's views, the Court does not find his views, *in toto*, patently deficient. The treatment history, record of confirmed back issues, and parallel views of Dr. Nold show that parts of Shahzad's assessment indeed are worthy of credence. The ALJ did not discuss or differentiate parts of the opinion discretely, and the Court will not supply that discussion.

      Further, the indirect analyses do not supply or meet the purposes of the regulation. The ALJ did not engage in much beyond what the Court already has discussed. She embraced the views of Dr. Nold (who saw Tarter only once and focused almost completely on an orthopedic exam, DE #9-1, at 221). Nold offered some views about hypertension and diabetes but did not explain any basis for those views. He reviewed no records. Rather, he focused on Tarter's back pain and leg weakness. Nold did not discuss medication issues or sleep apnea. He gave broad functionality opinions but did not specify or quantify limitations based even on his own perceptions of what Tarter could and could not do. The opinion thus is difficult to compare directly to that of Shahzad. The Court does not accept that the ALJ's discussion of Dr. Nold fills the procedural void. The decision does not allow the Court to assess how and why Dr. Shahzad's views paled so badly when compared to the limited (temporally and otherwise) involvement of Dr. Nold.[10] As to the state non-examining sources, the ALJ cited to them only generally. This adds little and fails to fulfill the aims of the regulation, requiring remand. That is, the decision does not provide implicitly the reasons for opinion weight and thus does not meet, even indirectly, the regulatory goals. *Friend*, 375 F. App'x at 551; *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006) (discussing implicit reasoning analysis).

---

[10] Interestingly, Dr. Nord saw certain balance limitations, which the ALJ evidently and without comment did not textually incorporate into the RFC. *See* DE #9-1, at 223 ("inability to balance"), 24 ("occasionally balancing" (emphasis removed)).

The ALJ's one-line rejection of Shahzad here requires remand. *See Bowlin*, 2009 WL 2423309, at *4 ("Despite Dr. Moses being a treating source, the ALJ devoted only two sentences to discussing his opinions of Bowlin's physical limitations."); *Wilson*, 378 F.3d at 545 (rejecting "summary dismissal" of treating source opinion); *Friend*, 375 F. App'x at 552 (requiring "some effort to identify the specific discrepancies and to explain"). The Court, though mindful of certain instances charitably reviewing truncated treating source analysis, simply cannot, without straining well-beyond the review standards, endorse the ALJ's analysis here. The decision may ultimately be defensible on the merits, but Tarter deserves the process assured by the Commissioner's own rules. Those rules extend "great deference" even to a non-controlling treating source, per *Rogers*, which is far from the short shrift afforded here.

## IV. Conclusion

Having considered the full record, and for the reasons discussed above, the Court **DENIES** DE #13, **GRANTS** DE #12 (insofar as it seeks remand), and **REMANDS** for consistent administrative proceedings. The Court will enter a separate judgment.

This the 18th day of August, 2015.

Signed By:
*Robert E. Wier*  REW
United States Magistrate Judge